UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RUBEN ORTIZ, JR., §<br>    Plaintiff §<br>§<br>vs. §<br>§<br>JO ANNE B. BARNHART, §<br>COMMISSIONER OF SOCIAL §<br>SECURITY, §<br>    Defendant § | CIVIL ACTION NO. C-05-573 |

## MEMORANDUM AND RECOMMENDATION

Ruben Ortiz, Jr. filed a complaint seeking reversal of the decision of the defendant Commissioner of Social Security ("Commissioner") for the purpose of receiving Supplemental Security Income ("SSI"). Plaintiff filed a motion and memorandum of law seeking reversal of the Commissioner's decision on March 2, 2006 and defendant filed a motion for summary judgment on March 16, 2006 (D.E. 7, 9, 10).

## BACKGROUND

Plaintiff filed his application on April 4, 2003 and it was denied at all administrative levels (Tr. 21-26, 39-41, 8-16, 3-5). Plaintiff alleges an inability to work since January 9, 2003 because of back pain and a drop foot (Tr. 61). His reported symptoms include back pain, left hip and right leg pain and an inability to walk without a lower leg brace (Tr. 86-91, 279, 284). Prior to the onset of his disability, he worked as a packager for a door company and a plumber's helper (Tr. 77).

**MEDICAL EVIDENCE**

Plaintiff saw David Foster, M.D., on March 16, 2000 complaining of a right lower extremity foot drop. He reported that approximately eight months earlier he first noted numbness and weakness in his right ankle and foot that had progressively worsened. He was unable to pick his foot up at all and when he raised his leg, his foot naturally fell. He had no leg weakness in his calf or thigh and reported no back, hip, or knee pain (Tr. 112). Tests showed an L4-5 herniated nucleus pulposus with L5 radiculopathy and a right foot drop. Physical examination showed normal and symmetrical deep tendon reflexes, decreased strength of the right tibialis anterior and the right extensor hallucis longus muscles. In addition, he had atrophy of the distal anterior right leg and L5 distribution on the right. He also had weakness of both inversion and eversion 1-2/5 (Tr. 113, 121-123, 145-146).

Plaintiff underwent surgery on March 13, 2001 to redo the right L4-L5 laminectomy and diskectomy (Tr. 127). This was plaintiff's second back surgery. Although it is undisputed that plaintiff had back surgery in 2000 (Tr. 12, 282), there are no surgical notes in the record relating to this procedure. On April 24, 2001 plaintiff reported continued low back pain with radicular symptoms down his right lower extremity and was wearing a brace to support his right foot. He was assessed with L4-5 radiculopathy with foot drop (Tr. 115).

In January 2003 Dr. Foster wrote two notes stating that plaintiff was not employable because of his low back pain (Tr. 135). He said he was expected to be unable to work for the next six months (Tr. 248-249).

An MRI on March 6, 2003 showed multiple level severe degenerative disc disease with L3-L4, L4-L5 and L5-S1 all having significant disc bulges. At L3-L4 the right paracentral was

yielding significant thecal sac encroachment and mild to moderate later recess and neural foraminal encroachment. At L3-L4 there was a far right paracentral protrusion which obliterated the lateral recess and moderately narrowed the neural foramen. At L5-S1 there was a polyploid disc protrusion in the right paracentral region which bordered on becoming an extruded fragment (Tr. 203-204).

On March 18, 2003 plaintiff underwent an L5-S1 diskectomy, an L5 decompressive laminectomy and an L5-S1 decompressive foraminotomy (Tr. 166). Plaintiff began a course of physical therapy in April 2003 (Tr. 240-241, 251-261). On April 2, 2003 John M. Borkowski, M.D., noted that plaintiff's foot drop had not resolved but his plantar flexor had returned to good strength. He prescribed a foot drop brace built into his shoe (Tr. 239).

Dr. Borkowski completed a functional capacities evaluation for plaintiff on March 7, 2005 in which he said that plaintiff suffers from permanent lumbar nerve damage and right foot drop. He said that plaintiff could sit for four hours per day, stand for three hours per day and walk for two hours per day. Plaintiff would be unable to perform sitting, standing and walking consistently for up to two hours without having to take an unreasonable number and length of rest periods during the two-hour period (Tr. 271).

In addition, Dr. Borkowski said plaintiff could lift up to 10 pounds for three hours and 45 minutes of an eight-hour day and has good use of his hands and fingers. He could not sit for six hours in an eight-hour day. He could carry an object weighing up to 20 pounds for two hours and 45 minutes of an eight-hour day and could sit for two hours. He cannot bend, stoop or crouch for five and a half hours in an eight-hour day (Id.).

Plaintiff could not work eight hours per day, five days a week because of his permanent nerve damage in his lumbar spine and his unrehabilitative weakness. He did not have a medical need to lie down more than every two hours, but he did have a need to rest for 15 minutes more often than every two hours. He recommended that plaintiff use a cane and foot drop splint (Tr. 272).

## HEARING TESTIMONY

At the hearing on February 15, 2005, plaintiff, who was represented by counsel, testified that he was 24 years old and was wearing a foot brace on his right leg because of his foot drop. The brace was prescribed by Dr. Willman, an orthopedic doctor, and plaintiff had been wearing it since 2001. He also had a back brace, prescribed by Dr. Borkowski, that he was supposed to wear but did not because it was uncomfortable. If he did not wear the foot brace he would trip because his foot drags and he trips over it (Tr. 278-279).

He had back surgery in February 2000, March 2001 and May 2003 and continues to have constant pain in his lower to middle back. He had seen Dr. Borkowski the week before the hearing, but prior to that plaintiff had not seen him for a year because he had no insurance and could not afford to see the doctor. He also was not taking medication because he could not afford it (Tr. 280-281).

He described the pain as a "seven" on a scale of one to ten and said it sometimes becomes worse. His foot drop was caused by a pinched nerve in his back and he started having the problem after his first surgery (Tr. 281). He did not have pain in his back until after his first surgery, which was for pain in his leg (Tr. 281-282).

He could shop for groceries as long as he had a basket.  He cannot walk on an uneven surface because of back pain.  He cannot open a new jar.  He experiences pain when he showers because it hurts to stand in one place for a long time (Tr. 282-283).  He cannot heel or toe walk.  The heaviest weight he could lift would be 10 to 20 pounds but he could not do it for three hours in a workday (Tr. 283).  He has children and is unable to carry them (Tr. 283-284).  With his brace on he could walk about 50 yards without pain.  Without his brace he could not walk ten feet.  He could stand or walk two hours out of an eight-hour workday, but he could not sit for six hours in an eight-hour workday because of back pain (Tr. 284).

He attended physical therapy once for a period of three months and it helped his back some.  The longest amount of time he has worked was nine months as a plumber's helper (Tr. 285).  He can bend, but it would cause him a lot of pain.  He could do it for two hours and 45 minutes in a day, but it would cause him pain.  He can crouch, but it would cause him pain (Tr. 285-286).

Dr. Borkowski has told him that there is nothing that can be done to help him because his spinal cord is not normal, but is a little too big.  He may need a fusion in the future (Tr. 286).

Plaintiff has tried to work odd jobs for his uncle and brother-in-law, cleaning swimming pools and doing yard work, but it caused him to be in a lot of pain.  He also tried working for his grandfather doing some type of easy work, but he ended up having another surgery after that (Tr. 286-287).  He lives with his mother, although he used to live with his girlfriend and their three children (Tr. 287).  His pain never goes away and it becomes worse with lifting, standing in place or sitting down for too long.  The most he ever sleeps is five hours at a time because of pain (Tr. 287-288).

The administrative law judge ("ALJ") posed a hypothetical question to the vocational expert ("VE") describing a 24-year-old person with an onset of disability at age 19 with past relevant work experience as a plumber's helper.  He would be able to lift 20 pounds occasionally and 10 pounds frequently and could only occasionally climb, stoop, kneel crouch and crawl.  He could not balance, or climb a ladder, rope or scaffold, work at unprotected heights or around dangerous moving machinery.  He could stand and walk a maximum of two to eight hours and sit for six out of eight hours, but would need to be able to sit and stand at will.  In addition, he has a foot drop brace built into his shoe but does not otherwise use assistive devices (Tr. 290).  The VE testified that such a person could not perform plaintiff's past relevant work as a plumber's helper (Tr. 291).

The VE further testified that plaintiff could perform some unskilled light and sedentary jobs such as a bench work assembler or production assembler with 5,000 such positions in Texas and 50,000 nationally.  That job has a Dictionary of Occupational Titles ("DOT") number of 706.687-010 (Tr. 291-294).  He could also work as a solderer or brazier using a soldering iron to make toy connections, which is light and unskilled with about 2,100 such jobs in Texas and 20,000 in the United States.  The DOT number is 813.684-022 (Tr. 295).

Petitioner could also do the work of an assembler of small items or as a final assembler of optical products with about 7,000 positions in Texas and 70,000 nationally.  The DOT number for the optical products worker is 713.687-018.  In addition, he could work as the cashier of a parking lot which is sedentary and unskilled with 2,500 positions in Texas and 25,000 nationally with DOT number of 211.462-010.  Finally, the person could work as traditional surveillance

systems monitor with 1,800 positions in the state and 20,000 nationally.  The DOT number is 379.367-010 (Tr. 296-299).

If a person were to miss two days per month because of a disability, either because of pain, medical appointments, or side effects of medication, he usually is subject to termination (Tr. 299-300).  That is especially true for workers at the unskilled and semi-skilled levels (Tr. 300).  Also, if an employee has to take frequent unscheduled breaks because of pain, he will be subject to termination (Tr. 301).

## LEGAL STANDARDS

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).  The burden has been described as more than a scintilla, but lower than a preponderance.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).  A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" Johnson v. Bowen, 864 F.2d 340, 344 (5th Cir. 1988)(citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present.  But the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)(citations omitted).  It is incumbent upon the Court to look at the

evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and others who have observed him and (4) the claimant's age, education and work history. Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)(citations omitted).

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. Martinez v. Chater, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520. The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

## DISCUSSION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his onset date of February 25, 2000 (Tr. 11-12). The ALJ further found that plaintiff had severe impairments, namely a right foot drop, lumbar diskectomy at L5-S1 and degenerative disc disease, but that the impairments did not meet or equal the criteria of any listed impairments (Tr. 12). The ALJ further determined that plaintiff could not return to his past relevant work because of the heavy lifting involved (Tr. 12). The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work and can occasionally climb, stoop, balance, crouch and crawl, but then found that he could never balance, climb ropes, ladders or scaffolds, and could

not work at unprotected heights or around dangerous moving machinery. He can stand and walk two hours in an eight-hour day and sit for six hours in an eight-hour day with normal breaks as long as he can change position as needed. In addition, he uses a foot drop brace built into his shoe (Tr. 13-14). Based on the testimony of the VE, the ALJ concluded that plaintiff can do the work of a bench work assembler, solderer, cashier in a parking lot, or surveillance camera monitor. Accordingly, the ALJ found plantiff not disabled (Tr. 14).

Plaintiff objects to these findings and argues that the ALJ's decision is not supported by substantial evidence. Specifically, plaintiff argues (1) The ALJ failed to properly consider plaintiff's subjective complaints of pain and (2) The ALJ did not properly consider the testimony of the treating physician (D.E. 7, pp. 14-19).

## A. Subjective Complaints of Pain

Plaintiff argues that the ALJ discounted his subjective complaints of pain. Social Security Ruling ("SSR") 96-7P[1] addresses evaluation of symptoms in disability claims and in particular, the credibility of an individual's statements. According to the ruling, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. The ALJ must next evaluate the intensity, persistence and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's abilities to do basic work activities. If the individual's statements regarding the intensity, persistence or functionally

---

[1] Social Security Rulings are not binding on the court, but may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ decisions. Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001)(citations omitted).

limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider the entire case record, including medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians, psychologists or other persons about the symptoms and how they affect the individual and any other relevant evidence.

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence, SSR 96-7P sets out the following factors, outlined in 20 C.F.R. 404.1529(c) and 416.929(c), which the ALJ should consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms, such as lying flat, standing for 15 to 20 minutes every hour or sleeping on a board; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

> Finally, the Ruling sets for the standard for making credibility determinations:
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case

>   record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7P, 1996 WL 374186 at *4 (S.S.A.).

In this case, the ALJ stated that there were minimal findings in the evidence to support the degree of incapacitating pain alleged by the plaintiff. He also stated that there was no evidence of any serious muscular weakness, atrophy, medical joint motion, muscle spasm, sensory loss, or other progressive physical deterioration which might be expected when there is intense and continuous pain (Tr. 13). The ALJ also said that plaintiff worked in 2001, 2002 and 2003 and that he had not sought medical treatment in two years and that such evidence was inconsistent with the severe constant pain alleged by the plaintiff (Id.).

The ALJ conducted the analysis called for by the regulations. He supported his limited reliance on plaintiff's allegations of disabling pain by pointing to evidence in the record indicating that plaintiff's pain is not intense and continuous. Although plaintiff disagrees with the ALJ's conclusion, substantial evidence supports his determination.

## B.  Credibility of Treating Physician

Plaintiff argues that the ALJ failed to properly credit the opinions of his treating physicians regarding his RFC. Dr. Borkowski assessed plaintiff as being able to sit less than six hours per day and as being unable to sit, stand or walk for two hours without taking an unreasonable number and length of rest periods within the two hour period (Tr. 271). Had the ALJ given Dr. Borkowski's opinion controlling weight, he would have found plaintiff disabled.

Instead, the ALJ found that plaintiff can do a limited range of light work and also sedentary work with a sit/stand option[2].

Under the regulations, the Commissioner is supposed to give more weight to opinions from treating sources because they are more likely to be the medical professionals most able to provide a detailed, longitudinal picture of a plaintiff's impairments and might bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If the treating physician's opinion on the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the Commissioner is supposed to give it controlling weight. If he does not give it controlling weight, he is supposed to look at the length, nature and extent of the treating relationship, the frequency of examination, the support provided by other evidence, the consistency of the opinion with the record as a whole and the specialization of the treating physician. 20 C.F.R. § 404.1527(d).

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

The ALJ can decrease reliance on treating physician testimony for good cause, which includes statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques or otherwise unsupported by evidence.  Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995)(citations omitted).  However, absent reliable medical evidence from a treating or examining physician controverting the claimant's treating physician, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's view under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).  Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000)(emphasis in original).  Also, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

In this case, the ALJ found that the medical record did not support Dr. Borkowski's findings regarding plaintiff's physical limitations (Tr. 17).  The ALJ notes that Dr. Borkowski has treated plaintiff since 2003 and his findings may be colored by concerns for plaintiff who has not worked for a number of years and who may have suffered financial loss as a result (Tr. 13).  This conclusion is not supported by substantial evidence in the record because the ALJ's assumption that Dr. Borkowski's assessment is colored by concern for plaintiff is nothing but a guess.

Nevertheless, the ALJ also noted that although Dr. Borkowski completed the RFC form in 2005, there was no evidence that he examined plaintiff at that time and there were no clinic notes to indicate how Dr. Borkowski arrived at his assessment (Tr. 13).  He also stated that there

are no X-rays, MRI's CT scans, myelography or electromylography indicating that plaintiff has a crushed, herniated or dislocated disc at the present time and there is no evidence of significant joint space narrowing, bony destruction or gross anatomical deformity (Tr. 12).

The ALJ has articulated his reasons for rejecting the RFC provided by Dr. Borkowski and that is what he is required to do under the regulations.  Accordingly, the ALJ's decision was based on substantial evidence and summary judgment should be entered for defendant.

## **RECOMMENDATION**

The Commissioner's determination that plaintiff is not disabled is supported by substantial evidence.  It is respectfully recommended that plaintiff's motion for summary judgment (D.E. 7) be DENIED, and the Commissioner's motion for summary judgment (D.E. 9) be GRANTED.  The Commissioner's determination that plaintiff is not disabled should be AFFIRMED.

Respectfully submitted this 1st day of May, 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** of receipt of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)-(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).